UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

**BARBARA ANN KELLY**
700 Gulf Shore Blvd. N.
Naples, FL  34102,

    **Plaintiff,**                                        Case No. _____

    v.

**ROGER SCHLOSSBERG**
18421 Henson Blvd.
Hagerstown, MD 21742,

    **Defendant,**

**FRANK MASTRO**
18421 Henson Blvd.
Hagerstown, MD 21742,

    **Defendant,**

**SCHLOSSBERG MASTRO & SCANLAN**
18421 Henson Blvd.
Hagerstown, MD 21742,

    **Defendant,**

**PAUL SWEENEY**
10211 Wincopin Cir. #500
Columbia, MD 21044,

    **Defendant, and**

**YUMKAS VIDMAR SWEENEY & MULRENIN, LLC,**
10211 Wincopin Cir. #500
Columbia, MD 21044,

    **Defendant.**

_____/

1

# COMPLAINT AND DEMAND FOR JURY TRIAL

Barbara Ann Kelly ("Kelly") by her below signed attorneys, sues Roger Schlossberg ("Schlossberg" or "Trustee"), Frank Mastro ("Mastro"), Schlossberg, Mastro & Scanlan ("SMS"), Paul Sweeney ("Sweeney"), and Yumkas, Vidmar, Sweeney, & Mulrenin ("YVSM") (with Schlossberg, Mastro, SMS, Sweeney, and YVSM each being a "Defendant" and collectively, the "Defendants") and states as follows:

## PARTIES

1. Plaintiff Kelly is a citizen of the state of Florida.

2. Defendant Schlossberg is a citizen of Maryland, and is engaged in the practice of law there. Schlossberg is a partner in Defendant SMS. Schlossberg also acts from time to time as a bankruptcy trustee.

3. Defendant Mastro is a citizen of Maryland, and is engaged in the practice of law there. Mastro is a partner in Defendant SMS.

4. Upon information and belief, Defendant SMS is a partnership operating in and organized under the laws of Maryland. SMS is engaged in the practice of law in Maryland.

5. Defendant Sweeney is a citizen of Maryland and is engaged in the practice of law there. Sweeney is a member of Defendant YVSM.

6. Upon information and belief, Defendant YVSM is a limited liability company operating in and organized under the laws of Maryland. YVSM is engaged in the practice of law in Maryland.

## JURISDICTION AND VENUE

7. All Defendants are subject to personal jurisdiction in this Court because they are

residents of the State of Maryland.

8. This Court has jurisdiction under 28 U.S.C. § 1331, because this case asserts claims arising under the Constitution or laws of the United States.

9. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and the claims are for a sum greater than seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

10. This Court has jurisdiction under 28 U.S.C. § 2201, *et seq.*, because the case arises from an actual controversy within the jurisdiction of this Court, and is not subject to any exception in 28 U.S.C. § 2201(a). This Court is therefore vested with the power to declare the rights and legal relations of Plaintiff as she is an interested party.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all Defendants reside in this State and in this judicial district.

## **BARTON DOCTRINE DOES NOT APPLY**

12. This case falls squarely within the "ultra vires exception" to the Barton doctrine which allows suits by individuals as a matter of right when a receiver by mistake or wrongfully takes possession of property belonging to another. Kelly alleges at the outset of this suit facts that establish a prima facie case against the Defendants and demonstrates that the Defendants knowingly and purposefully acted outside the scope of their authority in a tortious manner that is contrary to clearly established law where there was sufficient precedent at the time of the Defendants' unlawful actions, factually similar to Kelly's allegations, to put the Defendants on notice that their conduct was constitutionally prohibited. Further, 28 U.S.C. § 959(a) allows suits by individuals as a matter of right with respect to the Defendants' acts or transactions in carrying

on business connected with property belonging to Kelly. Moreover, a court-appointed receiver has no immunity where, as here, Plaintiff Kelly has alleged the Defendants stole her property. As theft is an inherently unlawful act, it is impossible that any court authorized any Defendant to commit theft, and therefore the allegations are necessarily outside the scope of any judicial authority or immunity. Here, the Defendants conversion and continuing retention of Kelly's property violates both Federal and state statutory law, including without limitation 18 U.S.C. § 645 and Md. Code Ann. Crim. § 7-104, as well as the applicable common law. Accordingly, the Defendants have no qualified immunity and Plaintiff Kelly may bring suit against the Defendants personally and hold the Defendants personally liable for their tortious conduct including wrongfully seizing, converting and retaining Kelly's property.

## GENERAL FACTUAL ALLEGATIONS

13. On March 23, 2004, Kelly and Gregory B. Myers ("Myers") purchased, as tenants by the entirety[1], the real property commonly known as Lot 6, Seaside 14, Santa Rosa Beach, Florida 32459 ("Lot 6").

14. On November 18, 2015, Myers filed an individual petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"), Case Number 15-26033 (the "Myers Bankruptcy Case").

15. Lot 6 itself (i.e., the "whole" of the entireties property owned by the marital unit) and Kelly's interest in Lot 6 were never property of the Myers bankruptcy estate under the Bankruptcy Code.

16. On October 25, 2016, the Bankruptcy Court authorized and directed Myers to sell Lot 6[2], and on October 27, 2016 Lot 6 was sold resulting in net sale proceeds of $1,110,247.01 being held in "escrow."

17. On February 15, 2017, the United States Trustee for Region Four, through counsel, told the Bankruptcy Court, "Generally T by E funds we say are not property of the estate."

18. On February 15, 2017, the Bankruptcy Court ruled that the Lot 6 sale proceeds are owned by Kelly and Myers as tenants by the entireties ("I ruled based on the law that the asset was T by E and therefore monies had to be released.").

19. On February 22, 2017, Schlossberg was appointed as chapter 7 trustee of the bankruptcy estate of Gregory B. Myers (the "Trustee").

20. On December 22, 2017, the Bankruptcy Court ruled that Myers's interest in Lot 6 and the Lot 6 sale proceeds was fully exempt (the "Exemption Order"). The Exemption Order was effective immediately, was not appealed by any party, and was immediately final and continually binding on all parties. Accordingly, any collateral attack by Schlossberg on the Lot 6 sale proceeds is and was in derogation of Kelly's and Myers's substantive property rights and is expressly barred by statute.

21. On December 12, 2017, Sweeney—principal of YVSM and general counsel to Schlossberg in the Myers Bankruptcy Case—testified under oath about the existence of actual conflicts of interest with numerous principals of Offit Kurman, *inter alia*, stating "Obviously I

---

[1] Kelly and Myers were married on May 23, 1992 and have remained continuously married since then.

knew that Offit Kurman was a creditor. Obviously I see that their attorney of record is Mr. Hoffman, Mr. Poppleton, and now we have Mr. Johnson who is also known to me. But at no time did any of those conflicts register as a connection[.]" Sweeney's "conflicts" of interest are imputed to Roger Schlossberg, Mastro, and SMS.

22.   In early 2018 — notwithstanding Schlossberg's express knowledge of Sweeney's admitted conflicts of interest with the Offit Kurman, P.A. law firm ("Offit Kurman") — Schlossberg said he transferred $525,000 of the Lot 6 sale proceeds to Offit Kurman.

23.   On April 10, 2018, the Bankruptcy Court confirmed that the Lot 6 sale proceeds were and are fully exempt property:

> MR. MYERS: Respectfully…there is an exemption order and the property that was on my amended schedule C is now exempt.
> THE COURT: **Understood. And that's understood.**

(Emphasis supplied).

24.   On July 30, 2018, the Bankruptcy Court confirmed that Schlossberg could not and cannot rely on the Lot 6 sale proceeds (i.e., fully exempt property and non-state property) in connection with the administration of the Myers bankruptcy estate:

> MR. MYERS: If it wasn't property of the estate and he's been a Chapter 7 trustee for 36 years and has been a trustee in between 20,000 and 30,000 cases, then why would he rely on an order directed at property that is not property of the estate?
> THE COURT: **It is legal argument. Because if it isn't property of the estate, then he couldn't rely on it. It's legal argument. I don't think he would dispute that.**

(Emphasis supplied).

---

[2] Specifically, the order to sell Lot 6 was made pursuant to 11 U.S.C. §§ 363(b) and 363(f), and not § 363(h).

25. On October 18, 2018, Schlossberg conceded in his own Bankruptcy Court filings that Lot 6 is fully exempt property, *inter alia*, stating:

> Although the Debtor's original Schedule C filed on December 16, 2015 only sought to exempt the property located at 700 Gulf Shore Blvd. in Naples, Florida, McNamee Hosea later filed an **Amended Schedule C on March 21, 2017** which claimed exemptions for the following additional properties:
>
> (1) 4505 Wetherill Road, Bethesda, Maryland
> (2) 147 Silver Laurel Way, Santa Rosa Beach, Florida
> **(3) <u>Lot 6</u>, Seaside Beach Subdivision, Santa Rosa Beach, Florida**
> (4) "Open space and natural areas" of The Villages at Seagrove Planned Unit Development
>
> Additionally, although the Trustee later filed an objection to the Debtor's claimed exemptions on Amended Schedule C, **the bankruptcy court ultimately overruled the Trustee's objections and the above exemptions were allowed to stand.**

(Emphasis supplied).

26. On May 6, 2019, Schlossberg testified under oath in the Bankruptcy Court that the "property" (i.e., the Lot 6 sale proceeds) was not administered:

> MR. SCHLOSSBERG: *** On March 21, 2017, that decision not to claim it as exempt went by the wayside and they amended to claim it as exempt property. I have given some thought to how, if at all in any possible way, this damaged the debtor and gave rise to a claim for losses sustained as a result of that damage or injury, and there simply isn't any. **The property was not administered**. I certainly tried my best with respect to that argument—I lost it and you have to move on.

(Emphasis supplied).

27. On May 6, 2019, Schlossberg further testified under oath that he took $190,000.00 of the Lot 6 sale proceeds ("I can't remember the exact numbers now, $190,000.00 I believe out of the funds – I took those from that."). Upon information and belief, Schlossberg

has transferred those same funds into the SMS operating account and/or to Defendant Schlossberg personally and/or to Defendant Mastro personally and/or to Defendant Sweeney personally.

28. Neither the Bankruptcy Court nor Schlossberg had jurisdiction or authority to attach, take control of, appropriate, convert or otherwise administer the Lot 6 sale proceeds (i.e., Kelly's non-estate property[3]), including without limitation, ordering same to be transferred to a purported creditor of the Myers bankruptcy estate.[4]

29. Contrary to repeated demands by Plaintiff Kelly and her counsel, Schlossberg has refused and failed to return the $1,110,247.01 in Lot 6 sale proceeds lawfully belonging to Kelly and Myers as tenants by the entireties.

30. Defendants Mastro, SMS, Sweeney, and YVSM acted at relevant times in coordination with Schlossberg, and/or supported and/or benefited from his unauthorized actions regarding Kelly's rights, interests, and property.

## COUNT I
### Declaratory Judgment
**(28 U.S.C. § 2201)**

31. Kelly incorporates all previous paragraphs as though they were fully set forth within this count of the complaint.

---

[3] Kelly never filed a proof of claim in the Myers Bankruptcy Case and therefore any claims against Kelly and her property could not be resolved in the claims allowance process in the Myers Bankruptcy Case.

[4] Property held as tenants by the entireties is exempt from the claims of creditors who do not have a **joint judgment** against the husband and wife arising out of a joint obligation. Here, it is undisputed that no creditor has a joint judgement against Kelly and Myers arising out of a joint obligation.

32. There is an actual, present, and practical need for declaratory relief because Kelly's interest in the Lot 6 sales proceeds and these issues are actual controversies that are real and substantial, and involve a genuine conflict of tangible interests.

33. Kelly therefore requests that this Court determine her rights and other legal relations with regard to Lot 6, the resulting Lot 6 sale proceeds, and the Chapter 7 Trustee's purported right vel non to possess, control, administer, transfer, disburse, or retain same.

WHEREFORE, Barbara Ann Kelly, demands that this Court enter a declaration that the Lot 6 sale proceeds are not part of the Myers bankruptcy estate, and that Schlossberg has no right or authority to seize, possess, control, administer, transfer, disburse, or retain the Lot 6 sale proceeds, declare all other rights as requested in this complaint, and award such further relief as is just and proper.

## COUNT II
**(42 U.S.C. § 1983)**

34. Kelly incorporates all previous paragraphs as though they were fully set forth within this count of the complaint.

35. As set forth in the foregoing paragraphs, Defendant Schlossberg was appointed as a trustee in a Chapter 7 bankruptcy case by a Federal Bankruptcy Court. As a court-appointed trustee, Defendant Schlossberg was given special powers and acted under color of state law.

36. Kelly's interest in Lot 6 and in the sale proceeds thereof was her constitutionally protected property.

37. Schlossberg's actions in seizing, possessing, controlling, administering, transferring, disbursing, or retaining the Lot 6 sale proceeds wrongfully deprived Kelly of her

9

property without due process of law, in violation of her civil rights as established by the 14th Amendment to the Constitution of the United States.

38.     The Defendant(s) violations of Kelly's rights damaged her by depriving her of her rightful property, and by preventing her from realizing the use and benefit of those funds.

WHEREFORE, Plaintiff Kelly demands judgment against Defendants for compensatory damages of not less than $1,110,247.01 plus interest, attorneys' fees, costs, and such other relief as this Court may deem proper.

## COUNT III
### (Conversion)

39.     Kelly incorporates all previous paragraphs as though they were fully set forth within this count of the complaint.

40.     Schlossberg and the other Defendants had no right or authority to seize, possess, control, administer, transfer, disburse, or retain any portion of the Lot 6 sale proceeds.

41.     Nevertheless, Schlossberg seized and took possession of the Lot 6 sale proceeds, placing them in a bank account(s) owned and controlled by him and/or the other Defendants. Schlossberg's taking of the Lot 6 proceeds was not authorized by Plaintiff Kelly, was intentional, and constituted a conversion of Kelly's property.

42.     Defendants actions caused damages to Kelly by depriving her of her rightful property, and by preventing her from realizing the use and benefit of those funds.

WHEREFORE, Plaintiff Kelly demands judgment against Defendants for compensatory damages of not less than $1,110,247.01 plus interest, attorneys' fees, costs, and such other relief as this Court may deem proper.

## COUNT IV
### (Wrongful Retention)

43. Kelly incorporates all previous paragraphs as though they were fully set forth within this count of the complaint.

44. Defendant Schlossberg's taking of the Lot 6 proceeds was not authorized by Kelly, was intentional, was without permission or justification, and constituted a conversion of Kelly's property. Further, Kelly was never impleaded or otherwise made a party to the Myers Bankruptcy Case.

45. Schlossberg acted with actual malice in converting Kelly's possessions to his own use. Schlossberg enjoyed monetary gain from these proceeds appropriating a percentage of these funds to enrich himself.

46. Schlossberg's conversion of Kelly's property deprived her of the use and benefit of the funds beginning October 2016 and continuing to the present. If Plaintiff Kelly had had access to these funds for this period, she would have benefitted from them in an amount to be proved at trial. Schlossberg and/or the other Defendants retained these funds and used them in their business(es) and/or personally benefitted from them in spite of repeated demands by Kelly to return the monies to her.

47. Kelly's property had a value of $1,110,247.01 at the time of conversion. Defendant Schlossberg, acting with malice, used Kelly's property to benefit himself and/or the other Defendants. Defendants had no legal right to convert and then retain Kelly's property.

WHEREFORE, Plaintiff Kelly demands judgment against Defendants for compensatory damages of not less than $1,110,247.01 plus interest, attorneys' fees, costs, and such other relief as this Court may deem proper.

## COUNT V
## (Constructive Fraud)

48. Kelly incorporates all previous paragraphs as though they were fully set forth within this count of the complaint.

49. Schlossberg owed a fiduciary duty to Kelly by virtue of his role as bankruptcy trustee.

50. As a Chapter 7 Trustee, Schlossberg held a position of public trust and owed a duty of good faith and fair dealing to all parties, including Kelly.

51. Schlossberg owed a further fiduciary duty to Kelly as a consequence of taking possession and/or control of the Lot 6 sale proceeds (her property) which were being held in "escrow" subsequent to the sale of Lot 6.

52. Schlossberg breached his duty to uphold the public's trust intentionally with malice, and/or with reckless disregard for Kelly's rights by willfully and intentionally seizing control of the Lot 6 sale proceeds without legal authority or justification.

53. Schlossberg breached his fiduciary duty to Kelly intentionally with malice, and/or with reckless disregard for Kelly's rights by willfully and intentionally seizing control of the Lot 6 sale proceeds without legal authority or justification.

54. Schlossberg further breached his fiduciary duty to Kelly intentionally with malice, and/or with reckless disregard for Kelly's rights by transferring $525,000 of the Lot 6 sale proceeds, which he knew to not be part of the Myers bankruptcy estate, to Offit Kurman in purported satisfaction of a debt of the Myers bankruptcy estate.

55. Upon information and belief, Schlossberg and/or his co-Defendants, personally retained at least $190,000 of the Lot 6 sale proceeds as unlawful compensation for transferring funds to Offit Kurman.

56. The Defendant(s)'s unlawful scheme to obtain consideration in exchange for transferring $525,000 of non-estate property to Offit Kurman was a violation of Schlossberg's public and fiduciary duty to administer the Myers bankruptcy estate in a lawful manner, and to protect the rights, interests, and property of non-debtors, including Kelly.

57. Schlossberg's actions were intended to benefit Schlossberg, Mastro, SMS, Sweeney, and YVSM, and were willfully made contrary to the best interests of the public and of Kelly as one of the tenants by the entireties owners of Lot 6 and the Lot 6 sale proceeds.  Further, Schlossberg's actions were taken with support and cooperation of all Defendants, despite actual knowledge of all relevant law and facts.

58. As a result of Schlossberg's breach of his legal, public, and fiduciary duties, Kelly has suffered material harm and material damages, and will continue to incur material harm and material damages due to loss of her interest in the Lot 6 sale proceeds.

WHEREFORE, Plaintiff Kelly demands judgment against Defendant Schlossberg for compensatory damages of not less than $1,110,247.01 plus $2,220,494.02 in punitive damages, plus interest, attorneys' fees, costs, and such other relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands to exercise her right to a trial by jury on all claims or issues so triable.

        Respectfully submitted,

        __/s/ Benjamin J. Andres_____
        Roger C. Simmons (Bar No. 04363)
        Jacob I. Weddle (Bar No. 28573)
        Benjamin J. Andres (Bar No. 20534)
        Gordon & Simmons, LLC
        1050 Key Parkway
        Suite 101
        Frederick, Maryland 21702
        301-662-9122
        301-698-0392 (fax)
        rsimmons@gordonsimmons.com
        jweddle@gordonsimmons.com
        bandres@gordonsimmons.com